IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TUBE CITY IMS, LLC,                  )
                                     )
                Plaintiff,           )
                                     )
        vs.                          )  Civil Action No. 09-845
                                     )
UNITED STEEL, PAPER AND              )
FORESTRY, RUBBER, MANU-              )
FACTURING, ENERGY, ALLIED            )
INDUSTRIAL AND SERVICE               )
WORKERS INTERNATIONAL                )
UNION, AFL-CIO/CLC, LOCAL            )
5852-19,                             )
                                     )
                Defendant.           )

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff, Tube City IMS, LLC ("the Company") filed this civil action under Section 301 of the Labor Management Relations Act, as amended, 29 U.S.C. § 185, seeking to vacate an arbitration award issued pursuant to a collective bargaining agreement with Defendant, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC, Local 5852-19 ("the Union"). In its answer to the complaint, the Union filed a counterclaim against the Company seeking confirmation of the arbitration award and other relief.

Presently before the Court are the parties' cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, the motion of the Union for summary

judgment will be granted, and the cross-motion of the Company for
summary judgment will be denied, with respect to the validity of
the arbitration award.

## II. UNCONTESTED FACTS[1]

The Company operates a scrap yard in West Mifflin,
Pennsylvania.  To record the number of hours worked by the
employees at its West Mifflin facility, the Company utilizes an
automated time clock system.  In response to complaints that the
automated time clock system's hand reader did not always register
employee input to validate starting times, the Company installed
two video cameras.  The first video camera, or the audit camera,
was focused on the faces of the employees using the hand reader,
while the second video camera was focused on the audit camera.

The Union represents the Company's employees at the West
Mifflin facility.  From May 1, 2005 to May 31, 2009, the Company
and the Union were parties to a collective bargaining agreement
("CBA") which limited the ability of management to suspend or
discharge an employee.  Specifically, Section IV of the CBA
provided that "... management of the plant and direction of the
working force including the right to hire, suspend or discharge
**for proper cause**, ... is vested exclusively in the Company...."
(emphasis added).  (Document No. 1-3, p. 2).

---

[1]The uncontested facts have been taken from the parties'
Concise Statements of Material Facts.  (Document Nos. 12 and 16).

2

The CBA in effect from May 1, 2005 through May 31, 1999 specifically incorporated a set of work rules, including a set of "Grade III Violations" which were considered "intolerable" and could result in an employee's discharge.  One of the Grade III Violations, which was entitled "Falsification of Records," stated: "Falsification of employment applications, benefit claims, payroll and production records, or similar Company records, or time clock abuse is prohibited."  (Document No. 1-3, Appendix "C" at p. iv).

During a review of the video from the audit camera for September 2, 2008, the Company's management personnel discovered that someone had tampered with the audit camera.  To determine the identity of that individual, a review of the audit camera's record history was conducted.  During this review, it was discovered that an employee named Jack Silbaugh ("Silbaugh") was the individual who had tampered with the audit camera.[2]  As a

---

[2]In the Arbitration Opinion and Award at issue, the facts leading to the Company's review of the video from the audit camera for September 2, 2008, which neither party has disputed, were described as follows:

                    *    *    *

In early September 2008, an employee complained that he had worked overtime during Labor Day weekend for which he was not compensated.  The Company investigated, and discovered that the camera near the hand reader was aimed downward, so that it showed part of the equipment, rather than an employee approaching the reader.  The Company tracked back to determine how the camera had become mis-aimed.

result, on September 11, 2008, Silbaugh's employment was
suspended for a Grade III Violation of the Company's work rules.[3]

On September 12 and 16, 2008, meetings were held to discuss
the issue of whether Silbaugh's employment should be terminated.
During these meetings, Silbaugh admitted to tampering with the
audit camera and the Union admitted that the Company had Silbaugh
"dead to rights."  Ultimately, the Company decided to discharge
Silbaugh and he was so notified by letter dated September 16,
2008.

On September 19, 2008, the Union filed a grievance to
challenge Silbaugh's discharge, and the parties voluntarily
agreed to submit the grievance to arbitration through the Federal
Mediation and Conciliation Service.[4]  The arbitration was

---

Images from the first camera, before it was re-aimed, show
that camera angle was changed by a hand on August 29, at
about 2:00 p.m.  The second camera images show Grievant Jake
Silbaugh walking to the camera near the reader, reaching out
to the lens cover on the first camera, and manipulating it
with his hand.  Silbaugh spent roughly nine seconds at the
camera.

                    *    *    *

(Document No. 1-4, p. 4).

[3]Under the CBA, the Company was prohibited from peremptorily
discharging an employee.  Rather, in all instances in which an
employee's conduct may justify discharge, the Company was
required to suspend the employee initially.  (Document No. 1-3,
Section VIII, p. 7).

[4]Section VII of the CBA addressed the issue of adjustment of
grievances in the event differences arose between the Company and
the Union "as to the meaning and application of the provisions of

4

scheduled for May 27, 2009 before Matthew M. Franckiewicz, and
the parties agreed that the issue to be arbitrated was whether
Silbaugh had been discharged for "just cause" as required by the
CBA.   During the arbitration, both parties presented and cross-
examined witnesses and offered exhibits into evidence, and, in
lieu of post-hearing briefs, both parties offered oral argument.

On June 9, 2009, Arbitrator Franckiewicz issued a seven-page
Opinion and Award in which he cited the relevant provisions of
the CBA, made findings of fact, stated the positions of the
parties and issued an award in favor of the Union.   In concluding
that Silbaugh had been discharged without just cause in violation
of the CBA, Arbitrator Franckiewicz stated:

\*   \*   \*

The question for me to decide is whether or not the
Grievant's conduct constituted "Falsification of Records" as
charged by the Company.   If so, he committed a dischargeable
offense, and I must deny the grievance.   If not, I must
sustain the grievance.   The parties agreed at the outset
that these are the only two choices available to me; I must
entirely sustain or entirely deny the grievance; I may not
sustain the grievance in part nor may I reduce the penalty
to a lesser discipline.

Given these constraints, I sustain the grievance for the
reasons set forth below.

"Time clock abuse" is a subset of the Grade III offense of
"Falsification of records. (sic) In order to discern what

_____

[the CBA]."   If a grievance was not resolved during one of the
three steps provided for settling grievances in the CBA, either
the Company or the Union had the right to refer the grievance to
an impartial arbitrator whose decision was "final and binding on
the parties."   (Document No. 1-3, p. 5).

the parties understood by the phrase "time clock abuse" it is instructive to look at the entire paragraph involved. It states:

> 5.  Falsification of Records
>
>     Falsification of employment applications, benefit claims, payroll and production records, or similar company records, or time clock abuse is prohibited.

The title of this paragraph "falsification of records" implies that the parties were concerned with dishonesty. The parties seem to regard dishonesty as especially serious, since three of the five Grade III offenses address dishonesty (the other two being "Stealing" and "Unauthorized Possession or Taking of Company Property").

Falsification of records involves more than inaccuracy, it involves deliberate inaccuracy.  Falsification involves more than a simple mistake, and implies a corrupt motive. Furthermore, all the other forms of conduct listed in the paragraph before time clock abuse suggest situations in which an employee attempts to receive something to which he or she would not otherwise be entitled (additional pay, a benefit, or even the job itself).

The evidence does not indicate that Silbaugh had any dishonorable motivation in tampering with the camera.  To the contrary, he seems to have had no motivation at all.  So far as I can determine, his very brief (nine seconds) fiddling with the camera was an idle, mindless act, much like a person might snap a pencil for no reason.  Perhaps what he did was silly, or sophomoric, or to use his own word "stupid," but there is no reason whatsoever to believe that Silbaugh intended to disable the time keeping system so as to allow himself or co-workers to obtain pay to which they were not entitled, and there is no claim that Silbaugh himself or any other employee received, or attempted to receive, improper payment because the camera's aim was askew.

In summary, I conclude that Silbaugh's tampering with the camera had no element of dishonesty, and therefore did not constitute "abuse" of the time keeping system, within the meaning of the Grade III offense of Falsification of Records.

*    *    *

(Document No. 1-4, p. 6).

In light of his conclusions, Arbitrator Franckiewicz directed the Company to rescind Silbaugh's discharge, promptly reinstate him, and make him whole for the economic losses he suffered as a result of the discharge without just cause.

## III. LEGAL ANALYSIS

A district court's standard of review of an arbitration award rendered pursuant to a collective bargaining agreement is well settled and was described by the Supreme Court in United Paperworkers Int'l Union, AFL-CIO v. Misco, 484 U.S. 29 (1987), as follows:

\*   \*   \*

Collective-bargaining agreements commonly provide grievance procedures to settle disputes between union and employer with respect to the interpretation and application of the agreement and require binding arbitration for unsettled grievances.  In such cases, and this is such a case, the Court made clear almost 30 years ago that the courts play only a limited role when asked to review the decision of an arbitrator.  The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract.  "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements.  The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the award."  Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960).  As long as the arbitrator's award "draws its essence from the collective bargaining agreement," and is not merely "his own brand of industrial justice," the award is legitimate.  Id., at 597, 80 S.Ct., at 1361.

\*   \*   \*

7

484 U.S. at 36.

See also W.R. Grace & Co. v. Local Union 759, Int'l Union of the
United Rubber, Cork, Linoleum & Plastic Workers of America, 461
U.S. 757, 764 (1983)(District court's scope of review over
arbitration award is narrowly circumscribed because parties who
include an arbitration clause in their collective bargaining
agreement "choose to have disputes concerning constructions of
the contract resolved by an arbitrator."); United Transportation
Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376 (3d Cir.
1995)(Only when arbitrator acts in manifest disregard of the law
or if record before arbitrator reveals no support whatsoever for
arbitrator's determination, may federal district court invade
province of arbitrator); Exxon Shipping Co. v. Exxon Seamen's
Union, 993 F.2d 357 (3d Cir.1993)(Arbitration award must
generally be enforced if award is based on arguable
interpretation and application of collective bargaining
agreement, and may be vacated only if there is no support in
record for determination or if award reflects manifest disregard
of agreement and is totally unsupported by principles of contract
construction); Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123
(3d Cir.1969)(A labor arbitrator's award does "draw its essence
from the collective bargaining agreement" and is thus valid if
the interpretation can in any rational way be derived from the
agreement, viewed in light of its language, context, and any

other indicia of the parties' intention; only where there is a
manifest disregard of the agreement, totally unsupported by
principles of contract construction and the law of the shop, may
reviewing court disturb the award).

As noted previously, the parties agreed that the issue to be
decided through arbitration was whether the Company had just
cause to discharge Silbaugh for "time clock abuse." If so,
Silbaugh's discharge was permissible under the CBA. If not, the
Company was obligated to reinstate Silbaugh. The Company
maintains the finding by Arbitrator Franckiewicz that Silbaugh's
undisputed conduct did not constitute "time clock abuse" because
he lacked a dishonest motive does not draw its essence from the
CBA, and, therefore, the arbitration award must be vacated.
According to the Company, Arbitrator Franckiewicz ignored the
plain, unambiguous language of the Grade III Violation at issue,
i.e., Falsification of Records, which contained "both elements of
deceit as well as elements of physical abuse by inclusion of the
disjunctive 'or'"; "interpreted the rule in a way that defies
logic"; and "effectively rendered the term 'time clock abuse'
meaningless." (Document No. 15, p. 11, Document No. 20, pp. 4-
5).

After consideration, the Court agrees with the Union that
this civil action "is really nothing more than the Company's
quibbling over the arbitrator's interpretation of the CBA."

9

(Document No. 13, p. 5).  Contrary to the Company's assertion, the phrase "time clock abuse" in the parties' CBA is not unambiguous.  Although the Company insists that the phrase means "physical" abuse of the time clock because the Grade III Violation "Falsification of Records" specifically includes a prohibition against falsification of payroll records, the Court notes that the word "physical" does not precede the phrase and that "payroll records" are not necessarily limited to time cards. Thus, Arbitrator Franckiewicz was required to interpret the phrase and his interpretation did not render the phrase meaningless in light of the other language in this Grade III Violation.

Moreover, it is clear from Arbitrator Franckiewicz's Opinion and Award that his interpretation of the phrase "time clock abuse" was based on the context in which it appeared in the parties' CBA, rather than "his own brand of industrial justice." Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960).  Specifically, Arbitrator Franckiewicz noted that "time clock abuse" was included in the Grade III Violation entitled "Falsification of Records," implying that the parties were concerned with dishonesty; that falsification implies a corrupt motive, rather than a simple mistake; that all of the other offenses listed in this Grade III Violation suggest situations in which an employee attempts to receive something to which he or

10

she is not entitled; and that the parties seemed to regard dishonesty as especially serious since 3 of the 5 Grade III Violations addressed dishonesty.  Simply put, the Court can find no basis for a conclusion that Arbitrator Franckiewicz's interpretation of the phrase "time clock abuse" does not draw its essence from the parties' CBA.  Rather than "def[ying] logic" as argued by the Company, the Court finds Arbitrator Franckiewicz's interpretation to be abundantly reasonable.

     In addition to seeking confirmation of Arbitrator Franckiewicz's Opinion and Award, the Union requests prejudgment interest on any back pay to which Silbaugh is entitled, as well as the attorneys' fees and costs incurred by the Union to defend this action.  With regard to prejudgment interest, the Union has presented conflicting statements regarding the status of Silbaugh's employment with the Company since the Arbitration Award and Opinion was issued.  Specifically, on page 5 of its Memorandum in Support of Summary Judgment, the Union indicates that the Company "has provisionally reinstated Silbaugh pending the outcome in this proceeding," while on page 10 of the same Memorandum the Union states that "[t]he Company's unwarranted refusal to abide by Arbitrator Franckiewicz's award resulted in Silbaugh being denied employment at the Company since the date the arbitrator ordered his reinstatement."  (Document No. 13).

Thus, it is not clear that Silbaugh is entitled to any back pay on which prejudgment interest could be awarded.

In any event, the Award of Arbitrator Franckiewicz included a provision requiring the Company to make Silbaugh whole for the economic losses suffered as a result of his improper discharge, as well as a provision stating that jurisdiction would be retained "for the limited purpose of resolving any disputes that may arise in connection with this remedy."  (Document No. 1-4). If, in fact, the Company did not reinstate Silbaugh after the issuance of the Arbitration Opinion and Award pending the outcome of this action and there is a dispute concerning the amount of money required to make Silbaugh whole for his economic losses, the Union should invoke the jurisdiction retained by Arbitrator Franckiewicz to resolve this issue.

As to the Union's request for attorneys' fees and costs, while the Company's arguments in support of vacating the Arbitration Opinion and Award were extremely weak, the Union has presented no evidence to establish that the Company filed this action in bad faith.  Accordingly, each party will be required to bear its own attorneys' fees and costs.

William L. Standish
United States District Judge

Date: January 7, 2010

12